688 P.2d 710

**ARIZONA MANAGEMENT CORPORATION,
Plaintiff-Appellant,**

v.

**Frederick E. KALLOF,
Defendant-Appellee.**

**No. 1 CA–CIV 6427.**

Court of Appeals of Arizona,
Division 1, Department C.

Sept. 4, 1984.

Tilker, Ranger, Shire & Nearhood by Roger W. Martin, Edward M. Ranger and John J. MacIntyre, Scottsdale, for plaintiff-appellant.

Jennings, Strouss & Salmon by William T. Birmingham and M. Byron Lewis, Phoenix, for defendant-appellee.

## OPINION

HAIRE, Judge.

This is an appeal from a final order entered by the Maricopa County Superior Court granting defendant Frederick E. Kallof's motion to dismiss plaintiff Arizona Management Corporation's malpractice complaint. The issue on appeal concerns whether the trial court properly determined that based upon the undisputed facts plaintiff-appellant's claim for legal malpractice was barred by the statute of limitations.

On appeal from a judgment dismissing a complaint, the court of appeals will consider the facts pleaded in the complaint as true. *Red Carpet-Barry & Associates, Inc. v. Apex Associates, Inc.,* 130 Ariz. 302, 635 P.2d 1224 (App.1981); *Maldonado v. Southern Pacific Transp. Co.,* 129 Ariz. 165, 629 P.2d 1001 (1981). Additionally, in this case, the trial judge appropriately relied on facts set forth in Kallof's Supplemental Memorandum in Support of Motion to Dismiss Complaint, which were specifically agreed to by appellant in its responsive memorandum filed in the trial court.

The appellant's claim concerns the malpractice of its attorney, Kallof, which allegedly occurred in 1968, some thirteen years prior to the filing of the malpractice complaint in this action. In the Spring of 1968, Kallof had represented appellant in attempting to resolve various disputes between appellant and W.B. Malouf, B.B. Malouf, the Malouf Company and others (hereinafter collectively referred to as "the Maloufs"). Kallof represented appellant in the drafting of a proposed settlement agreement with the Maloufs which was intended to resolve all outstanding differences and disputes between the parties. Ultimately the settlement agreement was formalized, reduced to writing and executed by the appellant on June 6, 1968, at the recommendation of Kallof. Kallof allegedly had advised appellant that, upon execution, the settlement agreement would be an enforceable contract in all respects. A short time later, however, a dispute

arose with respect to the implementation of certain terms and conditions of the settlement agreement, with the Maloufs refusing to perform in accordance with appellant's understanding of the provisions of the agreement.

On January 13, 1971, Kallof filed an action on behalf of appellant against the Maloufs seeking specific enforcement or damages for breach of the settlement agreement. Appellant sought relief based on provisions of the settlement agreement which allegedly were intended to give him the right to an exclusive leasing arrangement regarding a medical center and shopping center. The Maloufs answered and counterclaimed requesting that the master lease agreements be declared null and void, and subsequently moved for partial summary judgment contending that the terms and conditions of the settlement agreement were not sufficiently specific to be enforced and that they could not be required to issue master leases on the real properties in question. On May 11, 1976, the trial court entered a partial summary judgment against appellant and ordered that appellant was "not entitled to master leases on the properties" in question. Appellant appealed the adverse ruling, but it was affirmed by memorandum decision of the court of appeals on December 7, 1978 (1 CA-CIV 3915). Petition for review to the Arizona Supreme Court was denied by order entered on March 13, 1979 and the court of appeals issued its mandate on April 12, 1979.

Prior to the entry on May 11, 1976, of the partial summary judgment Kallof withdrew as counsel for appellant and new counsel was retained. Thereafter new counsel for appellant advised Kallof in a letter dated July 17, 1980, that appellant intended to sue him for malpractice. However, the complaint alleging malpractice on the part of Kallof was not filed until March 10, 1981. Kallof then filed a motion to dismiss the complaint urging that the malpractice action was barred by the two year statute

of limitations, A.R.S. § 12–542. The trial court granted Kallof's motion to dismiss appellant's complaint, and appellant has appealed that dismissal to this court.

■ The parties agree that in Arizona, legal malpractice actions are subject to the two year statute of limitations for tort claims as set forth in A.R.S. § 12–542. *See Long v. Buckley*, 129 Ariz. 141, 629 P.2d 557 (App.1981); *Wheeler v. Priebe*, 17 Ariz. App. 59, 495 P.2d 499 (1972). It is now settled that a claim for legal malpractice does not accrue until the aggrieved client knew or should have known of his attorney's negligence. *Long v. Buckley*, 129 Ariz. at 143, 629 P.2d at 559; *Yazzie v. Olney, Levy, Kaplan & Tenner*, 593 F.2d 100 (9th Cir.1979). Although in the trial court appellant's contention that the statute of limitations had not run was primarily related to whether appellant knew or should have known of the alleged malpractice of Kallof more than two years prior to the filing of the malpractice complaint, on appeal appellant does not dispute that it had such knowledge more than two years before the filing of its complaint, and, based upon the agreed facts it would be futile for it to do so.[1]

The governing notice of appeal filed by appellant in this matter is "from the Order denying Plaintiff's motion for new trial approved by The Honorable William T. Moroney on May 24, 1982." It is therefore limited and does not purport to be from the final judgment. *Cf. Summit Properties Inc. v. Wilson*, 26 Ariz.App. 550, 550 P.2d 104 (1976) (naming of specific adverse parties limits appeal to those parties). *See also*, comment, Rule 8(c), Arizona Rules of Civil Appellate Procedure. The only issue raised in the motion for new trial was whether appellant knew or should have known of the negligence of Kallof more than two years prior to the filing of its complaint. This issue has not been raised on appeal, and in the court's opinion it is questionable whether any other issue is legitimately before the court. However,

---

1. Appellant had such knowledge at the latest on May 11, 1976, when the partial summary judgment was entered after Kallof withdrew as counsel.

since appellee has not urged affirmance on this basis and the issue does not involve jurisdiction, we will proceed to consider appellant's contentions regarding damages, the only issue raised by appellant.

Appellant argues that it suffered no damages as a result of Kallof's alleged malpractice until it had exhausted all of its appellate remedies in the prior action, which occurred when the supreme court denied the petition for review on March 13, 1979, less than two years before the filing of the malpractice complaint on March 10, 1981.

A claim for legal malpractice does not accrue until the plaintiff-client has sustained some injury or damaging effect from the malpractice; negligence alone is not actionable. *AMFAC Distribution Corp. v. Miller*, 138 Ariz. 152, 673 P.2d 792 (1983), citing *DeBoer v. Brown*, 138 Ariz. 168, 673 P.2d 912 (1983) (court held that to state a cause of action for medical malpractice, the plaintiff-patient must have sustained some actual injury or damage from the malpractice). We hold that in this case, the injury or damaging effect occurred on the date the settlement agreement was entered into between appellant and the Maloufs, June 6, 1968. It was on that date that appellant failed to acquire the rights to master leases of certain properties which Kallof had represented would be obtained by appellant through the settlement agreement.

A similar issue as to when injury or damage occurs was presented in *Desruisseau v. Cameron*, 125 Ariz. 511, 611 P.2d 98 (1980). In *Desruisseau*, Cameron sold real property to Desruisseau. Several years later, in a nuisance action filed by Desruisseau against a neighboring landowner, the neighboring landowner filed a counterclaim against Desruisseau claiming title to a nine foot strip of property previously purchased by Desruisseau from Cameron. Thereafter Desruisseau filed an action against Cameron alleging fraud in the sale of the property. In the trial court, Cameron successfully relied on the statute of limitations as a bar to the action. On appeal Desruisseau argued that because his possession had been undisturbed, he had suffered no damage until the outcome of the appeal in the action in which title to land was ultimately quieted in the neighboring landowner. This court disagreed stating:

> "The 'damage' from the alleged fraudulent conduct occurred when Desruisseau allegedly *paid Cameron for land* he believed Cameron owned and had sold to him. The fact that ownership of the land in question was not judicially established until 1976 does not alter the fact that the damage occurred earlier." 125 Ariz. at 512-13, 611 P.2d at 99-100 (emphasis added).

Similarly in this appeal the fact that the validity of the lease agreement was not judicially established until the appellate process had been exhausted does not change the fact that appellant was damaged at the time he lost rights because of the alleged negligently drafted settlement agreement.

Furthermore, contrary to appellant's contention, these damages were ascertainable and not speculative, and thus appellant began to sustain actual damages from the day the agreement was entered into, June 6, 1968. From that day forward, the appellant lost the value that the exclusive lease arrangements would have given it had the settlement agreement been drafted so as to accomplish appellant's intent. Appellant in the suit filed in 1971 to enforce the settlement agreement estimated that its losses proximately caused by the Maloufs' failure to perform the exclusive lease arrangements under the settlement agreement were at a rate of $5,000 per month for each month from and after June 6, 1968. Appellant also at that early date complained that the result of Maloufs' delay and refusal to execute the lease agreements providing for options to purchase prevented appellant from effecting a sale of the property to any purchaser, and thus appellant claimed other damages in the amount of $125,000 from and after June 6, 1968. It is true that Kallof's total liability

arising from his negligent act was not certain and determined. However, appellant need not sustain all of its damages for a negligence claim to accrue. Instead, as stated in *Budd v. Nixen*, 6 Cal.3d 195, 201, 98 Cal.Rptr. 849, 852, 491 P.2d 433, 436 (1971):

> "The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. (See *Sonbergh v. MacQuarrie* (1952) 112 Cal. App.2d 771, 773, 247 P.2d 133; *Wood v. Currey* (1881) 57 Cal. 208, 210.) Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue."

Since appellant began sustaining actual damages on the date the settlement agreement was executed the damage element for an attorney malpractice cause of action was satisfied.[2]

■■■ In its list of supplemental authority appellant cites *AMFAC Distribution Corp. v. Miller*, 138 Ariz. 155, 673 P.2d 795 *approved as supplemented*, 138 Ariz. 152, 673 P.2d 792 (1983). *AMFAC* held that a cause of action for legal malpractice occurring during the course of litigation accrues "when the plaintiff knew or should reasonably have known of the malpractice and when the plaintiff's damages are certain

and not contingent upon the outcome of an appeal." *AMFAC*, 138 Ariz. at 153, 673 P.2d at 796. For policy reasons expressed in the opinion, *AMFAC* was expressly limited to situations where *malpractice occurs during the course of litigation.* Neither the policies nor the considerations relating to damages expressed in AMFAC are applicable to malpractice occurring in a nonlitigation context, particularly where the damages are so readily apparent as they are in this case.

We hold that the agreed facts show that appellant sustained damage based on the alleged negligent drafting of the settlement agreement substantially prior to two years before the filing of its malpractice complaint in 1981. Therefore the trial court correctly ruled that the claim was barred by A.R.S. § 12–542.

The judgment entered by the trial court is affirmed.

CONTRERAS, P.J., and GREER, J., concur.

---

2. In support of its contention that damages did not accrue until the appeal became final in the prior litigation, appellant relies on *Shideler v. Dwyer*, 386 N.E.2d 1211 (Ind.App.1979). However, overlooked by appellant, this case was vacated by a later Indiana Supreme Court decision which does not support appellant's position. *Shideler v. Dwyer*, 417 N.E.2d 281 (1981) (cause of action for attorney malpractice for

negligently drafting a will accrues simultaneously with death of the testator). Appellant also relies on *City of Phoenix v. Sittenfeld*, 53 Ariz. 240, 88 P.2d 83 (1939). However in *Sittenfeld* a decision in a pending action was considered a legal prerequisite for maintaining the subsequent action. There is no such prerequisite for the maintenance of an action for legal malpractice. *Cf. Desruisseau, supra.*